ROBERT E. HULL *v.* WARDEN, STATE PRISON
(11462)

DUPONT, O'CONNELL and FREEDMAN, Js.

---

Argued June 4—decision released July 20, 1993

*Paula Mangini Montonye,* assistant public defender, for the appellant (petitioner).

*Jacqueline J. Footman,* assistant state's attorney, for the appellee (respondent).

O'CONNELL, J. This is an appeal from the denial of a petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) improperly concluded that the failure of the petitioner's trial counsel to object to or otherwise address certain rebuttal testimony by the state's expert psychiatric witness did not constitute ineffective assistance of counsel,[1] and (2) abused

---

[1] We address the petitioner's claim that the habeas court improperly interpreted General Statutes § 54-86i within the larger framework of this claim.

its discretion by failing to consider all of the trial exhibits. We affirm the judgment of the habeas court.

In 1987, the petitioner was convicted of murder, in violation of General Statutes § 53a-54a, arising out of the stabbing of his wife. The conviction was affirmed on appeal. *State* v. *Hull,* 210 Conn. 481, 556 A.2d 154 (1989). Because the facts of the crime are detailed in the Supreme Court opinion, we will not repeat them here. For purposes of this appeal it is sufficient to state that it is not disputed that the petitioner killed his wife; the issue is the petitioner's state of mind at the time of the killing.

At trial, the petitioner called Walter Borden, a psychiatrist, in an effort to establish a defense of extreme emotional disturbance. Borden testified to problems in the petitioner's background including family abuse as a child, alcoholism, death of his three sons and a history of a dysfunctional relationship with his wife, the victim. Borden diagnosed the petitioner as having a mixed personality disorder with alcoholism. The critical testimony was Borden's opinion that the petitioner was not "capable of forming a conscious intent to stab his wife on June 19, 1985."

The state called Donald Grayson, another psychiatrist, to rebut Borden's opinion. The state's attorney posed a lengthy hypothetical question to Grayson culminating in a request that Grayson state if he had "an opinion as to whether the defendant at the time of the stabbing was capable of forming a conscious objective to cause his wife's death; that is, was he capable of forming an intent to kill his wife?" There was no objection and Grayson responded in the affirmative. The petitioner was convicted and, following an appeal, the conviction was affirmed. The petitioner's subsequent petition for a writ of habeas corpus was denied and this appeal followed.

Central to the petitioner's first claim is his contention that Grayson's response was an opinion on an ultimate issue in violation of General Statutes § 54-86i.[2] Section 54-86i provides: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone." The defendant argues that the failure of his trial counsel to object to Grayson's testimony "was clearly below the level of reasonable competence for criminal defense attorneys in 1987; and that his error caused the petitioner to be convicted . . . ."

The petitioner's claim is without merit for two reasons. First, Grayson's response was not objectionable. Grayson merely agreed that the petitioner had the capacity to form an intent to kill his wife at the time of the attack; he did not offer an opinion as to whether the petitioner actually had such an intent. Section 54-86i, which is to be narrowly construed; *State* v. *Joyner,* 225 Conn. 450, 480, 625 A.2d 791 (1993); does not proscribe expert opinion testimony concerning a defendant's *capacity* for a certain mental state; it proscribes testimony concerning whether a defendant *actually* had the relevant mental state at the time the crime charged was committed. *State* v. *Forrest,* 216 Conn. 139, 149, 578 A.2d 1066 (1990). Moreover, nei-

---

[2] The petitioner raised and briefed this issue in his direct appeal. *State* v. *Hull,* 210 Conn. 481, 556 A.2d 154 (1989). The Supreme Court declined to review the claim under either *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973) or the plain error doctrine. *State* v. *Hull,* supra, 484–85.

ther Grayson's response nor the state's question tracked the language of the statute under which the petitioner was convicted. See *State* v. *Raguseo,* 225 Conn. 114, 137–38, 622 A.2d 519 (1993) (expert testimony did not violate § 54-86i even though it closely proximated the statutory language establishing the defense of mental disease or defect because the testimony did not explicitly track the statutory language). Consequently, Grayson's response was not in violation of § 54-86i.

Second, even if we agreed that the petitioner's attorney could have successfully objected, his failure to do so does not constitute ineffective assistance of counsel. To prevail in such a claim, the petitioner "must show that: (1) his counsel's performance was deficient in the sense that the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense . . . in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation omitted; internal quotation marks omitted.) *Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356 (1991), quoting *Strickland* v. *Washington,* 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To demonstrate the requisite deficiency of performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. [*Levine* v. *Manson,* 195 Conn. 636, 688, 490 A.2d 82 (1985)]. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Safford* v. *Warden*, 223 Conn. 180, 193, 612 A.2d 1161 (1992). In the present case, the habeas court, after first concluding that Grayson's testimony was not objectionable, recognized that even if it were objectionable, the petitioner had not overcome the presumption that his counsel was employing sound trial strategy. The court observed that the evidence "clearly shows that [counsel's action] very well could have been, and probably was, a tactical decision."

Grayson's testimony was in rebuttal to the testimony of the defendant's own witness, Borden, who opined that the petitioner did not have the capacity to form the requisite intent. The habeas court recognized that as a result of Borden's testimony, the state "would have been allowed, even if there had been an objection, to introduce evidence to the contrary, that [the petitioner] had the capacity to have the intent." In further evaluating the petitioner's counsel's questioning of Borden, the court explained that "[i]n fact, I think that this was probably a wise tactical decision to take in this case, to ask Dr. Borden this question . . . knowing that the answer was going to be [that the petitioner] did not have the capacity to intend to stab his wife." The court further explained that counsel had "nothing to lose and everything to gain. The only possibility would be that the state's expert might balance out, and they would be where they would have been, had he not asked the question of Dr. Borden in the first place."[3]

---

[3] The petitioner's brief engages in a lengthy discussion concerning the distinction between Borden's opinion that he did not have the capacity to form the intent to *stab* his wife and Grayson's affirmative answer to the question asking whether the petitioner had the capacity to form the intent to *kill* his wife. The purpose of this discussion is apparently to demonstrate that the petitioner's trial counsel's questioning of Borden did not properly open the door to Grayson's response. Our review of the transcripts satis-

We find nothing in the record to demonstrate that the trial court improperly concluded that the petitioner failed to overcome the presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. In light of this, we need not proceed to a determination of whether there was a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different.

The defendant also claims that the habeas court improperly failed to consider all of the exhibits that had been admitted into evidence. Further facts are necessary to resolve this claim. At the time of the hearing, the petitioner decided to narrow the scope of his petition by withdrawing all of his claims except those that were inextricably bound to his underlying contention that Grayson's testimony violated § 54-86i.[4] In support of those claims, the transcripts of both expert witnesses were offered by the petitioner and admitted into evidence as petitioner's exhibits A and B. After the petitioner rested, he further offered the complete transcript of his criminal trial, which was admitted, by stipulation, as petitioner's exhibit C. Thereafter, at the close of the respondent's case, the respondent entered various appellate briefs produced in conjunction with the petitioner's direct appeal decided in 1989.

The habeas court issued its ruling and, responding to the petitioner's inquiry, stated that it had not reviewed exhibit C because "I felt it was not necessary to the decision because of my interpretation of § 54-86i and my conclusion that this was probably the best way

fies us that in the context of the entire testimony of the psychiatrists, there was no significant difference in character between the two responses; the distinction is one solely of semantics.

[4] The remaining claims alleged that the assistance of the petitioner's trial counsel was ineffective in that he did not (1) adequately cross-examine Grayson, (2) move in limine to preclude Grayson's opinion of the petitioner's capacity to form intent, and (3) object to Grayson's testimony.

to raise the defense he was entitled to raise. . . . I want to make clear, I did read [exhibits] A and B." The court further indicated that it had not read the appellate briefs either.

The petitioner relies on this court's decision in *Evans* v. *Warden,* 29 Conn. App. 274, 613 A.2d 327 (1992), for the proposition that a new hearing is warranted where the habeas court does not review all of the evidence. His reliance is misplaced. Although we recognize that the habeas court must consider all of the evidence admitted for all the purposes it is offered and claimed; id., 277; we also recognize that the court is not obligated to review evidence that is not relevant to any issue under consideration. The petitioner's counsel neither indicated the purpose of the offer of exhibit C, nor referred to it during the balance of the trial. Indeed, in closing argument, she informed the court that Grayson's response "was the issue. Who said what, who heard what, who was where is completely irrelevant. Completely irrelevant to a case when you admit that the defendant performed a particular act. The rest of the trial is almost irrelevant. [Grayson's response] is what was at issue. This is what counted."

Unlike this case, it was necessary for the *Evans* court to review the entire transcript to consider properly the broad scope of the petitioner's claims. The *Evans* petitioner had argued that his trial counsel "was ineffective in not presenting sufficient evidence to substantiate the petitioner's [defense] claims." Id. The petition also involved other claims that would have necessitated a reading of the transcript; id., 282 n.4; including a claim that the petitioner's appellate counsel failed to include a sufficiency of the evidence claim in the direct appeal. Id., 278. It is well established that such claims, which implicate the sufficiency of the evidence, require the reviewing court to construe all of the evidence presented at trial. See, e.g., *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993).

In the present case, however, the petitioner's claims are exceedingly narrow in scope and concerned solely with the testimony of Borden and Grayson. This is particularly true because the habeas court, having first concluded that Grayson's testimony did not violate § 54-86i and, therefore, that the petitioner's counsel was not ineffective for failing to object to it, had no need to proceed to the second prong of the *Strickland* test concerning the potentially broader issue of prejudice.

Although a habeas court is obligated to give careful *consideration* to all the evidence; *Evans* v. *Warden,* supra, 278; it does not have to read the full text of every exhibit. Id., 277. Here, the habeas court reviewed the parties' pretrial briefs, heard substantial testimony and argument at the hearing, read the transcripts of both experts' testimony, and was properly satisfied that neither a review of the entire trial transcript, nor a review of briefs filed in an appeal decided years earlier, would have been of any additional benefit. Accordingly, the habeas court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.