******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN MOYE *v.* COMMISSIONER OF CORRECTION
(AC 37234)

DiPentima, C. J., and Keller and Prescott, Js.

*Argued April 11—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of

Tolland, Fuger, J.)

*April E. Brodeur*, assigned counsel, for the appellant (petitioner).

*Emily D. Trudeau*, deputy assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, John Moye, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion by denying his petition for certification to appeal, and improperly (1) determined that his criminal trial counsel had not provided ineffective assistance by failing to request a sequestration order, (2) violated his right to due process by failing to review all of the evidence admitted at the habeas trial, and (3) refused to issue a capias for an absentee witness.[1] Having thoroughly reviewed the record, we conclude that the habeas court properly denied the petition for certification to appeal. Accordingly, we dismiss the appeal.

The following facts, as set forth by this court on direct appeal or as found by the habeas court, and procedural history are relevant to this appeal. "On the evening of April 30, 2005, after Clarence Jones, the victim, asked him for a ride, Jerry Booker picked up Jones, Roderick Coleman and the [petitioner]. The group briefly stopped at Booker's house in West Haven and then proceeded to the Ebony Lounge in New Haven. Coleman and the [petitioner] went inside for approximately fifteen minutes, while Booker and the victim waited in the car. When Coleman and the [petitioner] returned to the car, Coleman asked Booker to drive to the Pleasant Moments Cafe in Bridgeport, where his girlfriend worked as a dancer.

"Upon arriving at Pleasant Moments Cafe, Booker, Coleman and the victim entered the club while the [petitioner] stayed in the car. The three men who went inside the club were searched for weapons before they were allowed to enter. When Pleasant Moments Cafe closed for the night, Booker, Coleman and the victim emerged from the club with Tamara Wilson, Coleman's girlfriend, Tawana Little and a third woman by the name of Jada. They all got into Booker's car. Booker was the driver, the victim and Jada rode in the front passenger seat, the [petitioner] sat behind Booker, Little was seated next to him, and Wilson sat on Coleman's lap behind the front passenger's seat.

"Booker next drove to a nearby gasoline station. Booker, the victim and Jada got out of the car and entered the gasoline station. With the two men and Jada out of the car, the [petitioner] began telling the other passengers about his belief that Booker and the victim planned to rob him. He said that he was going to 'act up.' Those who went into the gasoline station returned to the car, and the group left the gasoline station to drop off Jada.

"As Booker was driving to Jada's house, his cellular telephone rang. He answered the telephone and handed

it to the victim when he realized that it was the victim's mother calling. Then a loud bang came from the backseat. The victim's mother heard someone say: 'Call 911. He's been shot.' The [petitioner], holding a gun, ordered everyone to get out of the car. Booker and Jada got out of the car, the [petitioner] got into the driver's seat, pushed the victim's body out of the car and drove away.

"After driving a short distance, the [petitioner] stopped the car, wiped down the steering wheel and car handles, and exited the car with Little, Wilson and Coleman. The group got into a taxicab and went to Little's house in New Haven. Once at Little's house, the [petitioner] again told the others that he believed that he was going to be robbed and that was why he shot the victim. He told Little that he had tried to shoot the victim in the face and also told Little and Wilson that they should 'take it to the grave.'

"The [petitioner] was arrested on May 20, 2005. He was found in a house in Stamford, lying across the seats of several chairs under a dining room table. The [petitioner] was charged with murder, carrying a pistol without a permit and criminal possession of a pistol. He was found guilty of murder and carrying a pistol without a permit, and entered an *Alford*[2] plea with regard to the criminal possession of a pistol charge." (Footnote added.) *State* v. *Moye*, 119 Conn. App. 143, 146–47, 986 A.2d 1134, cert. denied, 297 Conn. 907, 995 A.2d 638 (2010).

The petitioner appealed to this court from the judgment of conviction. On direct appeal, "[he claimed] that (1) there was insufficient evidence to support his conviction of murder, (2) the [trial] court improperly instructed the jury on the murder charge, (3) the prosecutor committed reversible impropriety during the [petitioner's] testimony and (4) the court improperly canvassed the [petitioner] with regard to his *Alford* plea to the charge of criminal possession of a pistol. We [affirmed] the [petitioner's] conviction of murder and carrying a pistol without a permit. We reverse[d], however, [his] conviction of criminal possession of a pistol." Id., 145–46.

Following this court's decision on direct appeal, the petitioner filed a petition for a writ of habeas corpus. In his third amended petition, the petitioner claimed that his trial counsel, Gary A. Mastronardi, rendered ineffective assistance by failing (1) to request a sequestration order for witnesses, (2) to object to certain testimony by the state's firearms examiner, and (3) to file a motion in limine to preclude testimony from the victim's mother.[3]

In regard to his claim that Mastronardi rendered ineffective assistance by failing to request a sequestration order, the petitioner alleged that if Mastronardi had requested a sequestration order, the state's witnesses,

specifically, the eyewitnesses to the shooting and the victim's mother, would not have been able to corroborate falsely each other's testimony. According to the petitioner, because Mastronardi did not request a sequestration order that prohibited the state's witnesses from discussing their testimony, they were able to discuss and conform their testimony prior to testifying. As proof that the state's witnesses had discussed and tailored their testimony, the petitioner emphasized the testimony of Wilson, who, at the criminal trial, testified that she had "*just found out* [that the victim] was on the phone with his mother [at the time he was shot]. I didn't know that at the time . . . ." (Emphasis added.) Subsequent to Wilson's testimony at the criminal trial, the victim's mother testified that at the time that the victim was shot, she was on the telephone with him. According to the petitioner, the victim's mother and Wilson discussed their testimony prior to either testifying in order to conform their testimony and, thus, falsely corroborate each other, which would not have occurred if Mastronardi had requested a sequestration order.

On July 28, 2014, the court, *Fuger, J.*, held a habeas trial, which lasted less than one full day. At the start of the habeas trial, both parties offered and had admitted without objection all of their exhibits. Following the admission of both parties' exhibits, the petitioner testified on his own behalf and then offered the testimony of Mastronardi. After Mastronardi's testimony, the petitioner requested that the court issue a capias for Wilson, who had not appeared at the habeas trial, although the petitioner had attempted to subpoena her. The court declined to do so. Both parties then rested and proceeded to make closing arguments. Immediately following closing arguments, the court issued an oral decision from the bench denying the petition.

The court began its oral decision, the transcript of which it later signed and filed with the clerk of the trial court,[4] by stating that it had "read the petitioner's pretrial brief. I have not read all of the transcripts that have been provided. I don't know that it is necessary to do so." The court then determined, inter alia, that the petitioner had not established that Mastronardi's failure to request a sequestration order constituted deficient performance. The court also found that the petitioner had failed to establish that he was prejudiced by Mastronardi's actions, in accordance with *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

On August 5, 2014, the petitioner sought certification to appeal to this court, which the habeas court denied. This appeal followed. Additional facts will be set forth as necessary.

Prior to addressing the petitioner's claims on appeal, we set forth the applicable standard of review. "Faced

with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Riddick* v. *Commissioner of Correction*, 113 Conn. App. 456, 459, 966 A.2d 762, appeal dismissed, 301 Conn. 51, 19 A.3d 174 (2011). "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 544, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

I

The petitioner first claims that the court improperly determined that Mastronardi had not rendered ineffective assistance by failing to request a sequestration order. Specifically, the petitioner alleges that Mastronardi's failure to request a sequestration order constituted deficient performance because his conduct was not reasonable given the importance of eyewitness testimony in this case. We are not persuaded.

The following additional facts and procedural history are relevant to this claim. At the underlying criminal trial, neither Mastronardi nor the state requested a sequestration order. Wilson, who was in the vehicle with the petitioner at the time that the victim was shot, testified at the criminal trial. During cross-examination, Mastronardi asked Wilson if the victim was on a cellular phone at the time of the incident. Wilson responded: "From my knowledge, I just found out he was on the phone with his mother. I didn't know that at the time cause he had drugs and I wasn't all in his face. So, I didn't know what he was doing at that time. I just know he was sitting there." Mastronardi had Wilson's entire response stricken from the record as unresponsive, and the jury was instructed to disregard Wilson's statement.

The following colloquy then ensued between Wilson and Mastronardi:

"Q. You never told the police about [the victim] being on a cell phone?

"A. No. . . .

"Q. You just told the jury a few minutes ago that you found out that [the victim] was on a cell phone. Is that right? . . . Yes or no.

"A. Yes.

"Q. And you found that out from [whom]? The prosecutor?

"A. No. I'd rather not say. It don't matter.

"Q. Well, somebody had to tell you something like that? . . .

"A. I'm not sure. I don't remember."

Two days later, the victim's mother testified at the criminal trial. She testified that she was speaking to her son on the telephone at the time he was shot. She did not hear a gunshot, but she did hear someone say that he had been shot and to call 911.

At the habeas trial, the petitioner argued that Mastronardi should have requested a sequestration order because the state's case relied heavily on eyewitness testimony. According to the petitioner, if Mastronardi had requested such an order, the state's witnesses would not have been allowed to speak with each other prior to testifying, and, therefore, Wilson never would have learned that the victim was on the telephone with his mother at the time he was shot. Because Wilson heard and repeated this information to the jury, the petitioner contended that she bolstered the credibility of the testimony of the victim's mother. The petitioner further contended that if the state's witnesses had tailored their testimony regarding whether the victim was on the telephone at the time he was shot, they may have discussed and tailored their testimony concerning other events.

In support of this claim, at the habeas trial, the petitioner offered the testimony of Mastronardi. Mastronardi could not recall whether he had any concerns about the eyewitnesses overhearing or discussing outside of court each other's testimony at the criminal trial. He also had no recollection concerning why he did not request a sequestration order in this case. Nor could he recall whether any of the witnesses were present in the courtroom prior to their own testimony. Mastronardi did recall, however, that he had cross-examined Wilson regarding from whom she had heard that the victim was on the telephone with his mother at the time he was shot, and that she did not have personal knowledge of the victim being on the telephone with

his mother at the time of the shooting. Mastronardi believed that he had discredited her testimony and presented to the jury that her testimony had been influenced by other witnesses or the prosecutor.

The habeas court determined that Mastronardi's performance was not deficient, and, even if it was deficient, the petitioner was not prejudiced by his actions: "[The court does not] find that the failure to seek a sequestration order is in and of itself deficient performance on the part of a trial defense counsel. . . . [Even] assuming that that was deficient performance—and I'm not making that finding; I'm assuming it for the purpose of argument—I don't see that it generated any prejudice toward [the petitioner]."

The following legal principles guide our analysis of this claim. "In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . . Competent representation is not to be equated with perfection. The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798–99, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

Pursuant to General Statutes § 54-85a, "[i]n any crimi-

nal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying." "Either party may invoke the court's authority to issue a sequestration order during any portion of the trial; the court lacks discretion to deny such a request." *State* v. *Morgan*, 70 Conn. App. 255, 277, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). "[A] sequestration order merely prohibits a sequestered witness from being in the courtroom when he is not testifying." *State* v. *Williams*, 169 Conn. 322, 331, 363 A.2d 72 (1975). "[A]t the request of counsel, the court, in its discretion, [also may] order that the testimony of any witness should not be discussed with any other past or prospective witness." (Internal quotation marks omitted.) Id.

"Sequestration serves a broad purpose. It is a procedural device that serves to prevent witnesses from tailoring their testimony to that of earlier witnesses; it aids in detecting testimony that is less than candid and assures that witnesses testify on the basis of their own knowledge. . . . In essence, it helps to ensure that the trial is fair." (Citations omitted.) *State* v. *Robinson*, 230 Conn. 591, 600, 646 A.2d 118 (1994).

In *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 804,[5] this court held that a defense counsel's decision whether to request a sequestration order is a matter of trial strategy, and that under the facts of the case, defense counsel's trial strategy was reasonable: "The uncontradicted testimony of [defense counsel] was that the decision not to press for the sequestration of witnesses reflected the consensus he and the petitioner had reached . . . . [I]t is well established that a habeas court cannot in hindsight second-guess an attorney's trial strategy. . . . The court should not have found for the petitioner on that ground, as the evidence adduced at the habeas hearing did not overcome the strong presumption that counsel's actions represented sound trial strategy." (Citation omitted.) Id., 804–805.

In the present case, the petitioner bore the burden of presenting sufficient evidence to establish that Mastronardi's actions constituted deficient performance. See *Morales* v. *Commissioner of Correction*, 99 Conn. App. 506, 509, 914 A.2d 602 (in habeas action, burden of proof on petitioner), cert. denied, 282 Conn. 906, 920 A.2d 308 (2007). The record is silent regarding why Mastronardi did not request a sequestration order. He could not recall why he did not request that the witnesses be sequestered. Thus, we do not know whether Mastronardi made a conscious decision not to request that the witnesses be sequestered. The decision, however, regarding whether to request a sequestration order is a matter of trial strategy, and the petitioner has not

argued otherwise. Because the decision to request a sequestration order is a matter of trial strategy, the petitioner was required to demonstrate that Mastronardi's failure to request a sequestration order was unreasonable in order to satisfy his burden of proof and overcome the strong presumption that counsel's conduct regarding matters of trial strategy is reasonable.[6]

This case is unlike *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 367, 77 A.3d 777 (2013), in which we held that certain failures by criminal trial counsel, whether motivated by strategy or not, will always constitute deficient performance in light of the fundamental right at stake. In *Holloway*, this court held that defense counsel's failure to object to the trial court's jury instruction, which omitted an explanation of an essential element of an offense with which the petitioner had been charged, constituted deficient performance because "[r]egardless of counsel's particular trial strategy on behalf of his client, he simply has no excuse not to insist that the jury be properly instructed on each essential element of every charged offense . . . ." Id., 366–67. The right to sequestration of witnesses, however, is not of such magnitude that a court will presume that, in the words of *Holloway*, "there is no conceivable tactical justification for defense counsel" to decide to forgo the right. Id., 367. Indeed, in any given case, there may well be valid and significant strategic reasons to decide not to seek sequestration of witnesses. See *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 804–805.

Accordingly, the petitioner in this case was required to establish that Mastronardi's performance was deficient by overcoming the presumption that counsel's conduct was reasonable. As the habeas court noted, "the quality of the evidence presented to [the habeas court] in connection with this habeas corpus petition [was] not very good as far as establishing the elements that need to be established to grant the petition." The record contains no evidence from which the habeas court or this court could determine whether Mastronardi's conduct was reasonable. It is true that, in *Franko* v. *Commissioner of Correction*, 165 Conn. App. 505, 520, A.3d (2016), this court held that we "may look to the record of the criminal trial as circumstantial evidence of trial counsel's strategy." In *Franko*, defense counsel did not testify at the habeas trial; id., 515; but this court determined that his closing argument at the criminal trial constituted evidence of his strategy for not requesting a jury instruction on a lesser included offense. Id., 517–18. The record in this case, however, contains little or no circumstantial evidence from which the habeas court could have divined Mastronardi's reason(s) to forgo sequestration or from which the habeas court could have concluded that Mastronardi's failure to seek sequestration was simply negligence or inadver-

tence. On this record, we decline to speculate as to why sequestration was not sought.

Absent any evidence regarding the basis for Mastronardi's failure to request a sequestration order, we are guided by the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 799. Because the petitioner failed to adduce sufficient evidence at the habeas trial to overcome this strong presumption and satisfy his burden of proof, the court properly determined that he did not establish that Mastronardi's failure to request a sequestration order constituted deficient performance.

Even if we assume for purposes of argument that Mastronardi's performance was deficient, we also conclude that the petitioner failed to establish that he was prejudiced by Mastronardi's failure to request sequestration. The petitioner argues that he was prejudiced because prior to testifying, Wilson spoke to another witness and learned information of which she had no personal knowledge—that the victim had been on the telephone with his mother when he was shot. Thus, according to the petitioner, Wilson's testimony falsely bolstered the credibility of the testimony of the victim's mother. The petitioner also argues that if Wilson colluded with another witness, it is possible that other witnesses colluded, and, therefore, it is impossible to know which portions of the testimony from the state's witnesses were accurate. We are not persuaded.

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citation omitted; internal quotation marks omitted.) Id.

The court properly determined that the petitioner had not established that he was prejudiced by Mastronardi's conduct for two reasons. First, the only portion of the criminal trial transcript that the petitioner relies on as proof that the witnesses discussed and tailored their testimony is Wilson's testimony that she had learned recently about the victim being on the telephone with his mother at the time he was shot. This testimony,

however, was stricken from the record, and the jury was instructed to disregard it. Unless proven otherwise, this court will presume that the jury acted lawfully and in accordance with the instructions given by the habeas court. See *State* v. *Santiago*, 269 Conn. 726, 762, 850 A.2d 199 (2004) ("[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them" [internal quotation marks omitted]). Therefore, the petitioner has failed to establish that any discussion between Wilson and another witness, assuming that such a discussion had occurred, prejudiced the outcome of his trial.

Second, the remaining argument set forth by the petitioner concerning prejudice is grounded in mere speculation. He contends that "[t]here is no telling what other information may have shaped the testimony of witnesses that would have been prevented by a sequestration order." The petitioner does not, however, cite to any portion of the criminal trial transcript or offer the testimony of witnesses to establish that witnesses discussed their testimony with one another. "It is well established that, in a claim of ineffective assistance of counsel, [m]ere conjecture and speculation are not enough to support a showing of prejudice." (Internal quotation marks omitted.) *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 166, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). Accordingly, the habeas court properly determined that the petitioner had failed to establish prejudice.

In sum, the habeas court properly determined that the petitioner did not establish that Mastronardi's failure to request a sequestration order constituted deficient performance. On the basis of this record, this claim is not debatable among jurists of reason, a court could not resolve the issue in a different manner, and the question does not deserve encouragement to proceed further. Accordingly, we conclude that the court did not abuse its discretion by denying the petition for certification to appeal as to this claim.

II

The petitioner next claims that the court violated his right to due process by rejecting his claims of ineffective assistance of counsel without reviewing all of the exhibits admitted into evidence. Specifically, the petitioner contends that the court could not have determined whether he was prejudiced by Mastronardi's actions, which must be viewed in the context of the entire criminal trial, without reviewing all the transcripts from the underlying criminal trial. See *Strickland* v. *Washington*, supra, 466 U.S. 695 ("[i]n making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury").

The respondent, the Commissioner of Correction,

contends that this claim is unpreserved and that the petitioner is not entitled to have it reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third condition of *Golding*); because the claim is not constitutional in nature. Alternatively, the respondent contends that even if this claim is preserved or reviewable pursuant to *Golding*, the court was not required to review every page of the trial transcripts in order to evaluate and dispose of the petitioner's claims. Although we agree with the petitioner that this claim is sufficiently preserved, we are not persuaded that the court failed to consider the relevant evidence in reaching its determination that the petitioner did not establish that Mastronardi's failure to request a sequestration order constituted deficient performance. Accordingly, we conclude that the court did not abuse its discretion by denying the petition for certification to appeal as to this claim.

As an initial matter, we address whether this claim is preserved. The petitioner did not object to the court's statement that it did not read all of the transcripts, which was made as part of the court's oral decision. The respondent argues that because the petitioner did not object to this statement at the habeas trial, this claim is not preserved. In response, the petitioner argues that this claim is preserved because he was not required to object to the statement and this claim was asserted in his petition for certification to appeal. We agree with the petitioner that he was not required to object to the court's statement, which was part of its oral decision, in order to preserve this claim for appeal.

An oral decision is the equivalent of a written memorandum of decision. See Practice Book § 64-1. If the court's decision in this case had been written, rather than oral, there would have been no opportunity for the petitioner to voice an objection to the statement, unless he did so in a motion seeking reconsideration or reargument. We generally do not require such a procedure in order to preserve a claim of this nature for appellate review. See *State* v. *Paul B.*, 315 Conn. 19, 34 n.5, 105 A.3d 130 (2014) (defendant not required to file motion for reconsideration to preserve claim that appellate court in its written memorandum of decision improperly construed his claim); see also Practice Book §§ 61-10 (b) and 66-5; *Solomon* v. *Aberman*, 196 Conn. 359, 376, 493 A.2d 193 (1985) (although motion for articulation or rectification may be necessary to correct ambiguous or incorrect statement in written memorandum of decision, no requirement to do so in order to preserve claim for appeal). We will not require a party to take additional steps to preserve a claim simply because the court's decision was oral, not written. We have found no authority, nor has the respondent cited any, requiring that a litigant object to statements made by a court while rendering an oral decision in order to

preserve a claim.

To hold otherwise would require a party to interrupt the court while it rendered its oral decision every time the court stated something with which a party did not agree. Such a rule would be unwise and unwieldy. Accordingly, the petitioner was not required to object to the statement at issue in order to preserve this claim, and, therefore, we conclude that this claim is preserved.

Having determined that this claim is preserved, the following additional facts are relevant to our review. Prior to the start of the habeas trial, the petitioner filed a brief. In the portion of the pretrial brief regarding his claim that Mastronardi rendered ineffective assistance of counsel by failing to request a sequestration order, the petitioner cited to the relevant portions of the underlying criminal trial transcript and to the written statement that Wilson had given to the police. The petitioner attached to his pretrial brief the cited portions of the criminal trial transcript. Included in the attached portions of the criminal trial transcript were Wilson's testimony that she recently had discovered that the victim was on the telephone with his mother at the time he was shot, Mastronardi's cross-examination of Wilson regarding this topic, and a portion of the testimony of the victim's mother. Also attached to the pretrial brief was the written statement that Wilson had given to the police following the shooting.

At the start of the habeas trial, both parties offered and had admitted without objection all of their exhibits. The petitioner offered and had admitted nineteen exhibits into evidence, eight of which were select portions[7] of the transcript from the underlying criminal trial. Of the nineteen exhibits that the petitioner offered into evidence, only four of the exhibits had not been attached to his pretrial brief: (1) the criminal trial transcript of closing argument, (2) the criminal trial transcript of the court's instructions to the jury, (3) the criminal trial transcript of the jury's return of its verdict and the petitioner's subsequent *Alford* plea, and (4) the sentencing transcript.

The respondent offered and had admitted into evidence nine exhibits. The first five exhibits were the transcripts from the five days of the criminal trial during which evidence was presented to the jury. The sixth exhibit was the criminal trial transcript of closing argument. The seventh exhibit was the criminal trial transcript of the court's instructions to the jury. The eighth exhibit was the criminal trial transcript of the jury's return of the verdict and the petitioner's subsequent *Alford* plea. The final exhibit was the sentencing transcript.

Following the admission of both parties' exhibits, the petitioner testified on his own behalf. After he finished testifying, the petitioner informed the court that Mastro-

nardi was not available to testify until after 2 o'clock in the afternoon. The court then stood in recess until Mastronardi was present. After the recess, Mastronardi, who was subpoenaed by the petitioner, testified. Both parties then rested. Without any further recess, the parties proceeded to make closing arguments.

Immediately following closing argument, the court issued its oral decision: "I'm going to deny the petition for a writ of habeas corpus. I've read the petitioner's pretrial brief. I have *not read all of the transcripts* that have been provided. I don't know that it is necessary to do so. There have been references to those—to what has taken place.

"The first comment I would make is that the quality of the evidence presented to this court in connection with this habeas corpus petition is not very good as far as establishing the elements that need to be established to grant the petition. . . .

"[T]he court finds that the overwhelming majority—if not the entirety—of [the petitioner's] testimony is not worthy of much credit, which then leaves us with [the testimony of Mastronardi], who . . . may have provided a little bit of insight into why he did what he did during trial, adequately . . . [explained] his actions during the trial.

"Now, when I look specifically at the items that are listed as the basis for a finding that [Mastronardi] was ineffective, the first one is the failure to seek sequestration. I cannot find that the failure to seek a sequestration order is in and of itself deficient performance on the part of a trial defense counsel.

"Apparently, by his testimony and the transcript, [Mastronardi] did not seek a sequestration order. Now, in this case, assuming that that was deficient performance—and I'm not making that finding; I'm assuming it for the purpose of argument—I don't see that it generated any prejudice toward [the petitioner]." (Emphasis added.)

The following legal principles guide our review of this claim. "[T]he trier [of fact] is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. . . . [W]e are not justified in finding error upon pure assumptions as to what the court may have done. . . . We cannot assume that the court's conclusions were reached without due weight having been given to the evidence presented and the facts found. . . . Unless the contrary appears, this court will assume that the court acted properly." (Citations omitted; internal quotation marks omitted.) *Giamattei* v. *DiCerbo*, 135 Conn. 159, 162, 62 A.2d 519 (1948); *Riddick* v. *Commissioner of Correction*, supra, 113 Conn. App. 465 ("generally [a] judge is presumed to have performed his duty properly unless the contrary appears" [internal

quotation marks omitted]). "[I]f . . . [a] statement [by the court may] suggest that the court did not consider [certain] testimony, we . . . are entitled to presume that the trial court acted properly and considered all the evidence. . . . There is, of course, no presumption of error." (Citations omitted.) *Solomon* v. *Aberman,* supra, 196 Conn. 375–76.[8]

The issue of whether the habeas court must read every word of the underlying criminal trial transcript has been addressed previously by this court. In *Evans* v. *Warden,* 29 Conn. App. 274, 276–77, 613 A.2d 327 (1992), the petitioner alleged that his criminal appellate counsel rendered ineffective assistance by failing to raise a sufficiency of the evidence claim on direct appeal. At the habeas trial, the habeas court stated that "I really don't think that I have any cause whatsoever to review the transcripts [of the underlying criminal trial]," and then denied the petition for a writ of habeas corpus. Id., 276 n.1. On appeal, this court held that the habeas court abused its discretion by failing to read the trial transcript because "[a] full and fair review of the petitioner's claim that . . . appellate counsel provided ineffective assistance in failing to include a sufficiency of the evidence claim in his direct appeal required the habeas court to read the trial transcript." Id., 278.

Since *Evans,* this court has clarified that *Evans* does not stand for the proposition that "a new hearing is [always] warranted [if] the habeas court does not review all of the evidence. . . . Although we recognize that the habeas court must consider all of the evidence admitted for all the purposes it is offered and claimed . . . we also recognize that the court is not obligated to review evidence that is not relevant to any issue under consideration." (Citation omitted.) *Hull* v. *Warden,* 32 Conn. App. 170, 177, 628 A.2d 32, cert. denied, 227 Conn. 920, 632 A.2d 691 (1993). Additionally, "[a]lthough a habeas court is obligated to give careful *consideration* to all the evidence . . . it does not have to read the full text of every exhibit." (Citations omitted; emphasis in original.) Id., 178.

In *Hull,* this court emphasized that the extent that the criminal trial transcript must be reviewed by the habeas court depends upon the nature and scope of the particular claim of ineffective assistance of counsel. The petitioner in *Hull* had alleged that his criminal trial counsel rendered ineffective assistance by failing to object to certain testimony. Id., 173. The habeas court determined that trial counsel's conduct was not deficient, and, thus, did not reach the prejudice prong of *Strickland.* Id., 174–75. The habeas court further stated that it did not review certain exhibits admitted at the habeas trial because it did not consider them necessary to its decision. Id., 176–77.

On appeal, this court, in reaching its decision, distin-

guished between the claim at issue in *Hull* and the claim at issue in *Evans*. In *Evans*, the petitioner's habeas claim had implicated the sufficiency of the evidence presented at the criminal trial, which "require[s] the reviewing court to construe all of the evidence presented at trial." Id., 177. Thus, the habeas court's refusal to review any, let alone all, of the criminal trial transcript required a new hearing. By contrast, in *Hull*, "the petitioner's claims [were] exceedingly narrow in scope and concerned solely with the testimony of [certain witnesses]. This [was] particularly true because the habeas court . . . concluded that . . . the petitioner's counsel was not ineffective for failing to object to [certain testimony, and, thus], had no need to proceed to the second prong of the *Strickland* test concerning the potentially broader issue of prejudice." Id., 178. Accordingly, this court concluded that the habeas court did not abuse its discretion by not reviewing the entire trial transcript because "the habeas court reviewed the parties' pretrial briefs, heard substantial testimony and argument at the hearing, read the transcripts of [the testimony of the witness at issue], and was properly satisfied that . . . a review of the entire trial transcript . . . would [not] have been of any additional benefit." Id.

Likewise, in *Rivera* v. *Commissioner of Correction*, 51 Conn. App. 336, 338, 721 A.2d 918 (1998), this court held that the habeas court, in determining whether trial counsel rendered ineffective assistance, did not abuse its discretion by reading only the portions of the criminal trial transcript that counsel specifically referenced, although the entire criminal trial transcript had been admitted into evidence.[9] In so doing, this court emphasized that the habeas court had reviewed the portions of the criminal trial transcript that the petitioner identified at the habeas trial as relevant to his claims, and, on appeal, the petitioner "was unable to articulate in his brief or at oral argument any reason why the habeas court was required to read the entire transcript in light of his discrete, particularized claims of ineffective assistance of counsel [none of which implicated the sufficiency of the evidence admitted at the criminal trial]." Id.

In the present case, the petitioner claims that Mastronardi rendered ineffective assistance by failing to request a sequestration order. In deciding this claim, as *Hull* and *Rivera* make clear, the extent to which the court was required to review the criminal trial transcript in this case was dependent upon the particular claim made and on which prong of *Strickland* the court based its determination. The petitioner's claim, unlike the claim in *Evans*, does not implicate the sufficiency of the evidence admitted at the underlying criminal trial; rather, his claim focuses on the testimony of particular witnesses. Additionally, similar to *Hull*, the habeas court found that the petitioner had failed to establish

that Mastronardi's performance was deficient. Although the habeas court did address the prejudice prong, it was not required to do so, and, thus, it was not required to review the entire criminal trial transcript.[10] See *Hull* v. *Warden*, supra, 32 Conn. App. 177.

Additionally, in deciding this claim, it is important to note that the habeas court did not state, as occurred in *Evans*, that it had not reviewed any of the criminal trial transcripts, but, rather, stated that it did not read *all* of the transcripts provided. It is unclear from that statement which portions of the criminal trial transcript the court did read. As a result, we must presume that the court acted properly and decline to interpret the court's statement to mean that it did not review all the *relevant* transcripts. Such a presumption is particularly apt in light of the petitioner's pretrial brief specifying which portions of the criminal trial transcript were relevant and the admission into evidence of irrelevant portions of the transcript, such as the transcripts of the jury's return of the verdict and the sentencing.

Moreover, the habeas court did state that it had reviewed the petitioner's pretrial brief. In his pretrial brief, the petitioner referred the court to specific, relevant portions of the criminal trial transcript, which he attached to the pretrial brief. The portions of the criminal trial transcript attached to the pretrial brief were contained in the transcripts that the court subsequently admitted into evidence at the habeas trial. Although the petitioner also offered and had admitted four other portions of the criminal trial transcript at the habeas trial, he has not articulated what significance these portions have to his particularized claim of ineffective assistance of counsel. To the extent that the habeas court did not review all the portions of the criminal trial transcript admitted into evidence at the habeas trial by the parties, the petitioner has failed to explain why the habeas court was required to read the entire transcript in light of his particular claim of deficient performance. Absent the petitioner identifying those portions of the transcript that (1) would have altered the court's determination and (2) the court failed to read, this court is guided by the presumption that the habeas court acted properly and considered all the relevant evidence. See *Solomon* v. *Aberman*, supra, 196 Conn. 376.

In rejecting the petitioner's claim, we caution habeas courts to avoid making ambiguous statements, like the one made by the court here. "A [trier of fact] is bound to *consider* all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. . . . [This principle is] fully applicable in habeas corpus trials." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Evans* v. *Warden*, supra, 29 Conn. App. 277. "Just as a jury should give careful consideration to all the evi-

dence in a case, so too should a habeas court give careful consideration to all the evidence . . . ." (Citation omitted.) Id., 278. If a habeas court concludes that it is not necessary to review certain exhibits in light of the manner in which it has disposed of the claims, it should endeavor to explain what it has not reviewed and why it is not necessary to do so. A court should strive to avoid leaving litigants with the impression that it has failed to discharge its duty or somehow acted unlawfully. Public confidence in our justice system is undermined if parties perceive that a court has not met its obligation to provide them with a full and fair review of their claims. We caution courts not to abrogate their duty to review the evidence admitted at trial or to give litigants the erroneous impression that they have done so.

In sum, we are not persuaded that the habeas court failed to consider all of the evidence pertaining to the issue of whether Mastronardi's failure to request a sequestration order constituted deficient performance. Because we are convinced on this record, and in light of the particular manner in which the court disposed of the petitioner's claim, that this claim is not debatable among jurists of reason, a court could not resolve the issue in a different manner, and the question does not deserve encouragement to proceed further, we conclude that the habeas court did not abuse its discretion by denying certification to appeal as to this claim.

### III

Finally, the petitioner claims that the court improperly refused to issue a capias for a witness who failed to appear to testify at the habeas trial. Specifically, the petitioner contends that the court improperly determined that it did not have the authority to issue a capias for the witness because the subpoena issued by the petitioner failed to conform to the statutory requirements of General Statutes § 52-143.[11] In response, the respondent argues that the court correctly determined that it could not issue a capias for the missing witness because the subpoena (1) was not personally served on her and was simply left at her abode, and (2) did not include either statutorily required language or payment of the witness fee. On the record before us, we are not persuaded by the petitioner's claim.

The following additional facts and procedural history are relevant to this claim. Prior to the start of the habeas trial, the petitioner sought to subpoena Wilson to offer testimony related to his claim that Mastronardi provided ineffective assistance of counsel by failing to ask the criminal trial court for an order of sequestration. The subpoena commanded that Wilson appear in court on the date of the habeas trial. The subpoena further notified Wilson that should she not appear in court on the day and at the time stated, "the court may order that you be arrested. Also, if one day's attendance and

traveling fees have been paid to you and you do not come to court and testify, without reasonable excuse, you will be fined not more than [$25] . . . ." The subpoena was not accompanied by payment for attendance and travel expenses.

On July 24, 2014, a person indifferent to the action was given the subpoena to serve it on Wilson. Such person left the subpoena at Wilson's last usual place of abode, but did not make personal contact with Wilson. Thus, the subpoena was not left in Wilson's physical presence, nor was its contents read aloud to her. Wilson subsequently failed to appear in court in response to the subpoena.

At the habeas trial, after offering the testimony of the petitioner and Mastronardi, the petitioner's counsel stated that the only further evidence she had was the testimony of Wilson, who had failed to appear. The petitioner requested that the court issue a capias in accordance with § 52-143 (e). The respondent objected, arguing that for a capias warrant to issue, in-hand service of the subpoena was required. The petitioner responded that in-hand service was not necessary because he could establish that Wilson had actual notice of the subpoena through a copy of an electronic voice mail from Wilson acknowledging that "she [had] received [the subpoena], and she knows she needs to be in court." The petitioner did not request that an audio recording of the voice mail be marked for identification in order to make it part of the record on appeal.[12] The court also noted that the petitioner had failed to tender travel and witness fees or to include statutorily required language in the subpoena. The court concluded that it was not authorized to issue a capias.

"The issuance of a capias is not mandatory, and lies within the discretion of the trial court. . . . If, however, a witness is not warranted in refusing to honor a subpoena and his absence will cause a miscarriage of justice, the court should issue a capias. . . . [If, however] the court never exercised any discretion because it believed its authority to do so was lacking [our review is plenary]. It is clear that the court [has] the power, if the witness had actually been served [properly with the subpoena] and refused to appear, to issue a capias." (Citations omitted.) *State* v. *Burrows*, 5 Conn. App. 556, 558–59, 500 A.2d 970 (1985), cert. denied, 199 Conn. 806, 508 A.2d 33 (1986); see *State* v. *Maldonado*, 193 Conn. 350, 360 n.6, 478 A.2d 581 (1984) ("[u]pon proof that a witness has been served with notice to appear, the trial court has authority to issue a capias to compel his or her attendance"); *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 371 n.9, 962 A.2d 904 (2009) (same).

Section 52-143 (e) sets forth, in relevant part, the requirements that must be met for the court to be authorized to issue a capias: "[I]f any other *person upon whom* a subpoena is served to appear and testify in a

cause pending before any court . . . fails to appear and testify, without reasonable excuse, he shall be fined . . . and the court or judge, *on proof of the service of a subpoena* . . . and the tender of such fees, may issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify." (Emphasis added.)

Section 52-143 (e) does not, by its terms, require in-hand service of the subpoena. This court has interpreted the phrase "person upon whom a subpoena is served" to "not require physical acceptance of [the subpoena], if the person is given *notice of it and its contents*." (Emphasis added.) *State* v. *Burrows*, supra, 5 Conn. App. 559. Thus, abode service of the subpoena authorizes the court to issue a capias only if the party requesting the capias establishes that the absentee witness received the subpoena and knows of the contents of the subpoena. See *State* v. *Frye*, 182 Conn. 476, 483, 438 A.2d 735 (1980) (leaving subpoena with witness' wife at his abode without proof that witness knew contents of subpoena, although he confirmed by telephone that he had received it, was not adequate service under § 52-143).

To the extent that this court must examine the record to determine whether the habeas court properly found that an absentee witness was not served properly, "[t]he duty to provide this court with a record adequate for review rests with the appellant. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . ." (Internal quotation marks omitted.) *Finan* v. *Finan*, 287 Conn. 491, 495, 949 A.2d 468 (2008).

A party may establish an adequate record for appeal by making an offer of proof or marking an exhibit for identification. "As a general matter, a trial court should always allow a party to make an offer of proof and mark an item as an exhibit for identification, for both practices generally are necessary to preserving the trial record for appellate review. . . . [I]f necessary [to properly preserve a claim for appellate review], the appellant . . . must make an offer of proof or offer an exhibit for identification . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Filippelli* v. *Saint Mary's Hospital*, 319 Conn. 113, 150–51, 124 A.3d 501 (2015); see *Finan* v. *Finan*, supra, 287 Conn. 495 ("[t]he purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review" [internal quotation marks omitted]).

A proper offer of proof requires the proffering party to disclose on the record the substance of the proffered evidence. *State* v. *Conrod*, 198 Conn. 592, 597, 504 A.2d 494 (1986). The court will not speculate as to the possi-

ble substance of excluded evidence in the absence of a proper offer of proof. Id., 598. Such an offer may be made by (1) presenting the substance of the evidence or testimony to the court outside the presence of the jury or (2) a good faith representation by counsel as to the contents of the evidence or testimony. See *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995). Additionally, the record independently may be adequate to establish the substance of the exhibit, if its content is read into the record. *Filippelli* v. *Saint Mary's Hospital*, supra, 319 Conn. 151.

In the present case, the petitioner failed to make a sufficient offer of proof that Wilson received the subpoena and knew its contents. The petitioner could have made a proper offer of proof in two ways: (1) he could have had a copy of the voice mail marked for identification or (2) he could have described the voice mail's contents adequately to make clear that it established that Wilson had actual notice of its content. The petitioner's counsel did not have a copy of the voice mail marked as an exhibit for identification, and her description of its content was so vague that it failed to establish that Wilson had actual notice of the subpoena's content. Although the petitioner's counsel stated that the voice mail established that Wilson received the subpoena and knew that she needed to be in court, counsel did not state whether the voice mail established that Wilson knew the particular contents of the subpoena, such as the date and time that she was required to appear in court. The petitioner's counsel admitted at oral argument to this court that her description of the voice mail's content was minimal. Without including a copy of the voice mail as part of the record or describing the voice mail's contents in sufficient detail, we only can speculate as to the contents of the voice mail, which we will not do. See *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364–65, 777 A.2d 681 (2001) ("[The role of an appellate court] is not to divine the possibilities, but to review the claims and exhibits presented to the trial court. In the present case, the record is deficient [because] we are left to speculate as to the factual predicates for [the plaintiff's] argument.").

Accordingly, the record is insufficient to review whether Wilson properly was served and whether the court improperly declined to issue a capias. Thus, the claim is not debatable among jurists of reason, a court could not resolve the issue in a different manner, and the question does not deserve encouragement to proceed further. The court did not abuse its discretion by denying the petition for certification to appeal as to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] For ease of discussion, we have addressed the petitioner's claims in a different order than presented in his brief on appeal.

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] In this appeal, the petitioner does not challenge the habeas court's determination that he had not established ineffective assistance of counsel with respect to his claims that Mastronardi failed to object to certain testimony by the state's firearms examiner, and to file a motion in limine to preclude testimony from the victim's mother. Accordingly, we deem any such claims abandoned.

[4] Practice Book § 64-1 (a) provides in relevant part: "The trial court shall state its decision either orally or in writing . . . . If oral, the decision shall be recorded by a court reporter, and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed with the clerk of the trial court. . . ."

[5] In *Toccaline*, the petitioner claimed that his criminal defense counsel had rendered ineffective assistance by failing to request a sequestration order. "At the criminal trial, [defense counsel] moved to sequester all the witnesses prior to the beginning of evidence with the exception of the petitioner's wife. In response, the trial court indicated that if a sequestration order were to be granted, it would include all potential witnesses, including the petitioner's wife. Confronted with those alternatives, [defense counsel] and the petitioner conferred and mutually decided not to pursue the sequestration motion so that the petitioner's wife could be present at the trial." (Footnote omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 804.

[6] After conducting a nationwide search, we have failed to find a single case in which a court has determined that defense counsel's failure to request a sequestration order constituted deficient performance. See, e.g., *Cannon* v. *Mullin*, 383 F.3d 1152, 1166 (10th Cir. 2004) (failure to request sequestration order did not constitute deficient performance), cert. denied, 544 U.S. 928, 125 S. Ct. 1664, 161 L. Ed. 2d 491 (2005); *State* v. *Scott*, 829 S.W.2d 120, 123 (Mo. App. 1992) (same); *Garcia* v. *State*, 678 N.W.2d 568, 573–74 (N.D. 2004) (same).

[7] The exhibits included (1) the transcript of closing argument, (2) the transcript of the court's instructions to the jury, (3) the transcript of the jury's return of its verdict and the petitioner's plea under *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), (4) the transcript of the sentencing, (5) a two page excerpt of the transcript of Booker's testimony, (6) a nine page excerpt from the transcript of Wilson's testimony, (7) an eight page excerpt from the transcript of an expert witness' testimony concerning firearms, and (8) a thirty-two page excerpt from the transcript of the testimony of the victim's mother.

[8] In *Solomon* v. *Aberman*, supra, 196 Conn. 375, the trial court in its memorandum of decision stated that only two trustees testified at trial, although four trustees actually had testified. The petitioners also had offered and had admitted a portion of the deposition testimony of a fifth trustee. Id., 375–76 and 376 n.13. On appeal, our Supreme Court stated that it would not presume that the trial court had not considered all of the relevant evidence on the basis of the trial court's statement, especially in light of the strong presumption that the court acted properly. Id., 375–76.

[9] We note that *Evans*, *Hull*, and *Rivera* were not cited by either the petitioner or the respondent in their appellate briefs.

[10] Even if the habeas court had relied solely on the prejudice prong, it was not required to review every word of the criminal trial transcript. The criminal trial court struck from the record, and instructed the jury to ignore, Wilson's testimony that she recently had learned that the victim was on the telephone with his mother at the time of the shooting. Additionally, Mastronardi later cross-examined Wilson on this topic. The habeas court was aware of these facts because they were included in the portions of the criminal trial transcript attached to the petitioner's pretrial brief, which the habeas court read. Accordingly, the habeas court was not required to review the remainder of the criminal trial transcript because the portions of the transcript that the habeas court did read established that any harm caused by Mastronardi's conduct was cured by the trial court's instructions to the jury and Mastronardi's cross-examination of Wilson.

[11] General Statutes § 52-143 provides in relevant part: "(a) Subpoenas for witnesses shall be signed by the clerk of the court or a commissioner of the Superior Court and shall be served by an officer, [or] indifferent person . . . . The subpoena shall be served not less than eighteen hours prior to

the time designated for the person summoned to appear, unless the court orders otherwise. . . .

(e) If any person summoned by the state, or by the Attorney General or an assistant attorney general, or by any public defender or assistant public defender acting in his official capacity, by a subpoena containing the statement as provided in subsection (d) of this section, or if any other person upon whom a subpoena is served to appear and testify in a cause pending before any court and to whom one day's attendance and fees for traveling to court have been tendered, fails to appear and testify, without reasonable excuse, he shall be fined not more than twenty-five dollars and pay all damages to the party aggrieved; and the court or judge, on proof of the service of a subpoena containing the statement as provided in subsection (d) of this section, or on proof of the service of a subpoena and the tender of such fees, may issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify. . . ."

[12] We note that the petitioner alleged during oral argument to this court that the habeas court refused to listen to the voice mail on two occasions. The record, however, does not support this contention. The petitioner never requested that the habeas court listen to the voice mail or that it mark the voice mail as an exhibit. Furthermore, the petitioner admitted at oral argument to this court that his habeas counsel did not discuss the contents of the voice mail in any depth at the habeas trial.