******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

CARGIL NICHOLSON *v.* COMMISSIONER OF
CORRECTION
(AC 40101)

Sheldon, Moll and Mihalakos, Js.

*Syllabus*

The petitioner, who previously had been convicted of manslaughter in the
first degree in connection with his conduct in stabbing the victim during
an altercation, sought a writ of habeas corpus. He claimed that his
trial counsel rendered ineffective assistance by failing to present the
testimony of an expert witness, M, a forensic toxicologist, to support
his justification defense by offering testimony as to the presence and
effects of certain drugs found in the victim's system, which he claimed
was necessary to lay a foundation for the admission of the victim's
toxicology report into evidence. M testified at the habeas trial as to his
qualifications as an expert in the field of toxicology, as well as the
general effects of the drugs found in the victim's system, but the court
declined to treat M as an expert witness on the ground that the petitioner
did not make an express offer to the court to accept M as an expert
witness. The court rendered judgment denying the habeas petition in
an oral decision in which it stated that it had not reviewed certain
transcripts of the criminal trial that had been admitted at the habeas
trial. Subsequently, the habeas court denied the petition for certification
to appeal, and the petitioner appealed to this court. *Held:*

1. The habeas court did not abuse its discretion in denying the petition for
   certification to appeal, the petitioner having failed to show that his
   claims were debatable among jurists of reason, that a court could have
   resolved the issues in a different manner, or that the questions were
   adequate to deserve encouragement to proceed further.
2. The petitioner could not prevail on his claim that his trial counsel rendered
   ineffective assistance by failing to call an expert witness to testify about
   the presence and effects of the drugs in the victim's system; trial counsel
   having testified at the habeas trial that he had consulted with various
   experts regarding the toxicology report but that none of them offered an
   opinion favorable to the petitioner's justification defense, trial counsel's
   decision not to retain an expert constituted a reasonable tactical deci-
   sion, and the habeas court's finding that trial counsel had contacted
   various experts, none of whom provided him with an opinion favorable
   to the petitioner's justification defense, was not clearly erroneous, as
   the evidence adduced at the habeas trial did not establish that trial
   counsel was aware of or had ever consulted with M, whom the petitioner
   claimed would have provided an opinion at the criminal trial favorable
   to his justification defense.
3. The petitioner's claim that the habeas court abused its discretion in
   declining to treat M as an expert witness at the habeas trial was unavail-
   ing; although that court erred in declining to treat M as an expert witness,
   as the petitioner disclosed M as an expert prior to trial and elicited
   sufficient testimony from M establishing his qualifications to testify as
   an expert witness, without objection, and the applicable provision (§ 7-
   2) of the Connecticut Code of Evidence did not require an explicit offer
   and acceptance of M as an expert in order for M to be treated as an
   expert witness, the petitioner nevertheless failed to demonstrate that
   the court's error was harmful because even if the court had treated M's
   testimony regarding the presence and effect of the drugs in the victim's
   system as expert testimony, that testimony was immaterial to its determi-
   nation that trial counsel's performance was not deficient.
4. The habeas court did not abuse its discretion in denying the petition for
   certification to appeal as to the petitioner's claim that the court improp-
   erly failed to review certain evidence admitted at the habeas trial prior
   to denying the habeas petition; that court was not required to review
   the entire criminal transcript before rendering its oral decision denying
   the habeas petition, as the petitioner's claim focused solely on trial
   counsel's failure to call an expert witness to testify as to the presence
   and effects of the drugs in the victim's system, the excerpts from the

criminal trial transcripts identified by the petitioner had no bearing on the court's analysis of whether counsel's performance was deficient, and the petitioner failed to identify any excerpts from the criminal trial transcripts that would have altered the court's determination that counsel's performance was not deficient.

Argued September 11—officially released December 4, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Desmond M. Ryan*, assigned counsel, for the appellant (petitioner).

*Linda Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Emily D. Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Cargil Nicholson, appeals from the denial of his amended petition for a writ of habeas corpus following the denial of his petition for certification to appeal. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal, (2) erroneously concluded that he failed to establish that his state and federal constitutional rights to the effective assistance of counsel were violated,[1] (3) abused its discretion in declining to treat a witness at the habeas trial as an expert witness, and (4) abused its discretion in failing to review certain evidence admitted at the habeas trial prior to denying his amended petition for a writ of habeas corpus. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the appeal.

The following facts, as set forth by this court in the petitioner's direct appeal from his conviction, and procedural history are relevant to our disposition of the petitioner's claims.[2] "On March 13, 2012, at approximately 6 p.m., the victim, James Cleary, was dropped off in front of his apartment building by Michael Vena and Vincent [Faulkner], with whom he had worked cutting down a tree that day. The victim carried his two chain saws with him into the apartment. Vena then drove around to the back of the apartment building, where he and Faulkner put the victim's climbing gear and ropes into the victim's van. The victim greeted his wife and put down his chain saws. The music from the apartment upstairs was quite loud, and the victim's wife complained to him.[3] The victim proceeded to go upstairs, and his wife followed behind him.

"The victim's wife remained down the hallway while the victim knocked on the [petitioner's] door, and the door opened. The victim started yelling at the [petitioner] to turn down the music. The victim was approximately fifty years old, weighed approximately 156 pounds, and was five feet, nine inches tall. The [petitioner], who was approximately five feet, seven inches to five feet, eight inches tall, and weighed approximately 175 pounds, then punched the victim in the face. The victim hit him back. The [petitioner] then pulled the victim into the apartment and a scuffle ensued, which was heard by the victim's wife, who had remained down the hallway. The [petitioner] called the victim 'the f-ing white devil.' The [petitioner] then repeatedly hit the victim with an umbrella.

"The [petitioner's] live-in girlfriend, Tracy Wright, had been in the bathroom washing her hair when the scuffle first ensued. Upon exiting the bathroom, Wright saw the [petitioner] and the victim fighting. Wright tried to get between the victim and the [petitioner] to stop the

fight, but the victim pushed her back. The [petitioner] then grabbed a stool with both hands and hit the victim in the back with it at least once, but may have hit him as many as four times. The force of the blow to the back was 'pretty hard,' hard enough that the victim would 'feel the pain.' Wright told the [petitioner] to put down the stool, thinking that the [petitioner] could hurt or kill the victim with the stool, and the [petitioner] complied.

"Wright then grabbed the victim by the arm, and, while standing beside him, opened the door, and the victim went out into the hallway, proceeding sideways through the doorway. Although Wright did not notice any blood or witness the victim being stabbed, the [petitioner], after putting down the stool, had picked up a knife from the counter and had stabbed the victim in the back, either before or shortly after Wright had grabbed the victim by the arm. The stab wound in the victim's back was seven and one-quarter inches deep. After getting the victim out of the apartment, Wright called 911, telling the dispatcher that she had pushed the victim out the door. The [petitioner] washed off the knife before the police arrived.

"The altercation inside the apartment took only seconds, and when the victim staggered out of the [petitioner's] apartment, he told his wife that the [petitioner] had stabbed him in the back. The victim's shirt was pulled up, his woolen cap had been pulled off, and he was bleeding from his back. Panic stricken, the victim's wife ran downstairs, where she grabbed her purse so that she could take the victim to the hospital. She then went into the hallway looking for the victim. When she could not find him in the hallway, she went outside to the front of the house, where she saw the victim fall to his knees. The victim then told his wife that he thought he was dying. The victim's wife realized that she did not have her car keys, so she returned to the apartment to get them.

"Meanwhile, Vena, who had dropped the victim off at the front of the house only five to ten minutes earlier, had finished putting away the victim's gear and was leaving the property when he saw the victim lying on the steps. Vena saw blood and immediately told Faulkner to get out of the truck and to help the victim, which he did. The victim then 'stumbled' into the backseat of the truck, and Faulkner jumped into the front passenger's seat. The victim told Vena, 'He stabbed me.' Vena then called 911 and drove to the Main Street intersection, where he waited for the ambulance to arrive. The victim died as a result of the stab wound." (Footnote in original.) *State* v. *Nicholson*, 155 Conn. App. 499, 500–503, 109 A.3d 1010, cert. denied, 316 Conn. 913, 111 A.3d 884 (2015).

The petitioner was arrested and charged with murder in violation of General Statutes § 53a-54a (a). The case

was tried to a jury over the course of several days. During the first day of evidence, the state called the victim's wife to testify.

During cross-examination, the victim's wife testified that the victim had been taking unspecified medications. The petitioner's criminal defense counsel, Jonathan Demirjian, asked her to identify those medications.

The state objected to that inquiry, contending that the court needed to address a pending motion in limine filed by the state, which sought to preclude evidence of the victim's toxicology results. Outside of the jury's presence, Demirjian questioned the victim's wife about the victim's medications. She testified that the victim had been taking Soma for back pain, methadone, and an unidentified antianxiety medication. Demirjian informed the trial court that he intended to elicit testimony from the victim's wife about the victim's medications in front of the jury, asserting that the testimony was relevant to the victim's state of mind and conduct during the altercation with the petitioner. The state objected, arguing that the testimony regarding the medications constituted inadmissible character evidence. Following argument, the court stated: "I think the connection you're trying to draw is that these substances made [the victim] act in a bizarre manner. And I'm not so sure that connection can be drawn on this state of the evidence. Anyways I'll ponder the issue and rule tomorrow." The following day, the court stated: "We left off last – yesterday afternoon talking about the fact that the victim was on a Methadone maintenance program and had used some substance for backaches or muscle aches. At this point in time I've concluded that the [state is] correct in [its] objection that that's not relevant and it would be unduly prejudicial. It would merely invite speculation on the part of the jury so the state's request with respect to its motion in limine is granted."

On the third day of evidence, the state called H. Wayne Carver, the chief state medical examiner, who had performed the victim's autopsy, to testify. Before beginning his cross-examination of Dr. Carver and outside of the jury's presence, Demirjian informed the court that he intended to question Dr. Carver regarding the toxicological results from the victim's autopsy. Demirjian offered to the court the victim's autopsy report, attached to which was the victim's toxicology report. The document was marked as an exhibit for identification. Demirjian argued that the toxicology report indicated that several drugs were found in the victim's system at the time of his death and that those drugs likely affected the victim's state of mind and conduct during the altercation with the petitioner. The state objected, arguing that the proffered evidence regarding the drugs constituted inadmissible character

evidence and was irrelevant. The state further argued that the petitioner had not disclosed an expert to provide testimony explaining the effects of the drugs on the victim's state of mind at the time of the altercation. Following argument, the court stated: "Dr. Carver has testified about the manner and cause of death and I don't see how drugs in a system relate to a stab wound having caused the death, so it's not relevant on that issue. And then Mr. Demirjian you've claimed that the substances and the drugs in the [victim's] body may relate to other issues in the case, that is the [victim's] state of mind. . . . The state has not at this point put [the victim's] state of mind in issue and neither side has. So it's just not relevant to the cross-examination of Dr. [Carver]. And putting that evidence in the case would just leave the groundwork for the jury to speculate in the absence of any evidence as to how such drugs would affect [the victim's] state of mind. So the court's ruling is that it does not relate to the direct examination of Dr. Carver and therefore the state's motion [in limine] is granted."

During the petitioner's case-in-chief in the criminal trial, Demirjian called several witnesses to testify, including the petitioner. Demirjian did not call an expert witness to offer testimony regarding the presence and effects of the drugs found in the victim's system. The petitioner raised defense of premises as a justification defense at the criminal trial, and the trial court instructed the jury on this defense. *State* v. *Nicholson*, supra, 155 Conn. App. 503. The petitioner was found not guilty on the murder charge, but he was convicted of manslaughter in the first degree in violation of General Statutes § 53a-55. Id. The petitioner appealed from the judgment of conviction, claiming that the state failed to present sufficient evidence to disprove his defense of premises justification defense beyond a reasonable doubt and that the prosecutor engaged in impropriety during closing argument. Id., 500. This court affirmed the judgment. Id., 519.

On March 19, 2014, the petitioner, representing himself, filed a petition for a writ of habeas corpus. On July 12, 2016, after appointed habeas counsel had appeared on his behalf, the petitioner filed an amended one count petition claiming that Demirjian rendered ineffective assistance by failing to call Dr. Carver or another expert witness during the criminal trial to lay foundational testimony to admit the victim's toxicology report into evidence.[4]

On January 10, 2017, the habeas court, *Fuger, J.*, held a one day trial. The court heard testimony from Joel Milzoff, a forensic toxicologist, and Demirjian. The petitioner did not testify. Immediately following the parties' respective closing arguments, the court issued an oral decision from the bench denying the amended petition.[5] Thereafter, the petitioner filed a petition for certifica-

tion to appeal from the judgment denying the amended petition, which the court denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court abused its discretion in denying his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. We disagree.

We begin by "setting forth the procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the [amended] habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Grover* v. *Commissioner of Correction*, 183 Conn. App. 804, 811–12,    A.3d    , cert. denied, 330 Conn. 933,    A.3d    (2018).

For the reasons set forth in parts II, III, and IV of this opinion, we conclude that the petitioner has failed to demonstrate that his claims are debatable among jurists of reason, a court could resolve the issues in a different manner, or the questions are adequate to deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

II

We now turn to the petitioner's substantive claims on appeal. The petitioner's first substantive claim is that the habeas court erroneously concluded that he failed to establish that Demirjian rendered ineffective assistance. Specifically, the petitioner asserts that Demirjian rendered deficient performance by failing to call an expert witness, namely, Dr. Milzoff, during the petitioner's case-in-chief at the criminal trial to support the petitioner's justification defense by offering testimony as to the presence and effects of the drugs found in the victim's system. We disagree.

We begin by setting forth the relevant standard of review and legal principles that govern our review of the petitioner's claim. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. . . . As enunciated in *Strickland* v. *Washington*, supra, [687], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: [1] a performance prong and [2] a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The [petitioner's] claim will succeed only if both prongs are satisfied. . . . The court, however, can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Chance* v. *Commissioner of Correction*, 184 Conn. App. 524, 533–34, A.3d , cert. denied, 330 Conn. 934, A.3d (2018).

The following additional facts and procedural history are relevant to the petitioner's claim. At the habeas trial, the petitioner called Dr. Milzoff as his first witness.

Dr. Milzoff testified that the victim's toxicology report indicated that several drugs, including methadone, morphine, and Prozac, were found in the victim's system at the time of his death. He further provided testimony explaining the general effects of those drugs. He did not offer any testimony concerning whether Demirjian had contacted him around the time of the criminal trial to discuss the victim's toxicology report.

The petitioner next called Demirjian as a witness, who testified as follows. He reviewed the victim's toxicology report before the criminal trial. He intended to cross-examine Dr. Carver about the drugs found in the victim's system, but the trial court precluded him from questioning Dr. Carver on that subject. In addition, Demirjian contacted two or three unidentified experts (whom he referred to as "drug people") to review the victim's toxicology report, but none of those individuals offered opinions supporting his argument that the drugs found in the victim's system increased the victim's aggression, which would have bolstered the petitioner's justification defense. Such experts informed him that methadone, one of the drugs found in the victim's system, had a calming effect. On the basis of the experts' unfavorable opinions, Demirjian decided not to retain an expert to testify during the petitioner's case-in-chief about the presence and effects of the drugs found in the victim's system.

During redirect examination, the petitioner asked Demirjian whether he had contacted Dr. Milzoff to review the victim's toxicology report. The petitioner directed Demirjian to an excerpt from the criminal trial transcripts, which had been admitted into evidence at the habeas trial. The excerpt reflected that the state, in objecting to Demirjian's attempt to question Dr. Carver about the victim's toxicology report during cross-examination, argued that Demirjian had not represented that he had retained an expert to testify about the effects of the drugs found in the victim's system, although the state noted that "we heard mention of Dr. [Milzoff] some time ago, [but] we've heard nothing else, we've got no report from him." After reviewing the excerpt and his personal file, Demirjian testified that Dr. Milzoff may have been mentioned during the criminal trial, but he could not recall whether he had contacted Dr. Milzoff.

In denying the petitioner's amended petition for a writ of habeas corpus, the habeas court determined that the petitioner failed to establish that Demirjian's performance was deficient. The court stated in relevant part: "Demirjian's testimony is that he explored the question of whether the toxicology report would lend credence to [the petitioner's] argument that this manslaughter was committed as self-defense. . . . Demirjian's testimony, stated in conclusory terms, was that none of the persons with whom he consulted were

able to give him any information that would have been helpful in supporting the defense of self-defense. If anything, according to . . . Demirjian, the drugs contained within the tox report – toxicology report would have had a calming effect upon the victim rather than an agitating effect. . . . In this case it is clear that, number one, . . . Demirjian had the toxicology report. Number two, he investigated as to whether it would be of value in assisting [the petitioner] in his self-defense defense. Number three, he concluded, based upon his research and consultation with various people – various experts – that it would be of no value. Consequently, he didn't feel that it was worthwhile pursuing. And even if he had, the state had filed a motion in limine to prevent the admission of the tox report. I simply don't see any deficient performance on the part of Attorney Demirjian in this case." The court further determined that, even if Demirjian's performance had been deficient, the petitioner failed to demonstrate that he had been prejudiced by Demirjian's deficient performance.

On appeal, the petitioner claims that Demirjian's failure to call Dr. Milzoff, of whom, the petitioner contends, Demirjian was aware and with whom Demirjian had consulted around the time of the criminal trial, constituted deficient performance.[6] The petitioner further asserts that, had Demirjian retained Dr. Milzoff as an expert witness, Dr. Milzoff would have aided the petitioner's justification defense by testifying that the drugs found in the victim's system could have increased the victim's pain threshold, irritability, and agitation during the altercation with the petitioner. In response, the respondent, the Commissioner of Correction, argues, inter alia, that Demirjian made a reasonable strategic decision not to call an expert witness because Demirjian received opinions from several experts that were not favorable to the petitioner's justification defense. We agree with the respondent.

"To prove his or her entitlement to relief pursuant to *Strickland,* a petitioner must first satisfy what the courts refer to as the performance prong; this requires that the petitioner demonstrate that his or her counsel's assistance was, in fact, ineffective in that counsel's performance was deficient. To establish that there was deficient performance by the petitioner's counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after convic-

tion or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . In reconstructing the circumstances, a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Citations omitted; internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 538–39, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

"As this court previously has observed, '[a] trial attorney is entitled to rely reasonably on the opinion of an expert witness . . . and is not required to continue searching for a different expert.' . . . *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 816, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). Moreover, it is well established that when a criminal defense attorney consults with 'an expert in a relevant field' who thereafter apprises counsel that he or she cannot provide favorable testimony, counsel is 'entitled to rely reasonably on [that] opinion . . . and [is] not required to continue searching for a different expert.' Id., 817; see also *Brian S.* v. *Commissioner of Correction*, 172 Conn. App. 535, 544, 160 A.3d 1110 ('[t]he fact that the petitioner later was able to present testimony at his habeas trial from . . . a different expert, perhaps more specialized than [the expert originally consulted by his criminal trial counsel] . . . did not establish that counsel's performance was deficient for relying on [the original] expert opinion in preparation for the petitioner's criminal trial'), cert. denied, 326 Conn. 904, 163 A.3d 1204 (2017).

"As the United States Supreme Court has explained in the context of ineffective assistance of counsel claims, '[t]he selection of an expert witness is a paradigmatic example of the type of "strategic choic[e]" that, when made "after thorough investigation of [the] law and facts," is "virtually unchallengeable." ' [*Hinton* v. *Alabama*, 571 U.S. 263, 275, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014)]; accord *Brian S.* v. *Commissioner of Correction*, supra, 172 Conn. App. 543–44 (rejecting claim of deficient performance when trial counsel consulted

with expert, made strategic decision not to present his testimony at trial or to seek another opinion, and 'strategized that the best course of action' was alternate theory of defense); *Bharrat* v. *Commissioner of Correction*, 167 Conn. App. 158, 170, 143 A.3d 1106 (rejecting claim of deficient performance when trial counsel consulted with expert but ultimately 'made the reasonable, strategic decision not to call an expert witness at the underlying criminal trial'), cert. denied, 323 Conn. 924, 149 A.3d 982 (2016); *Stephen S.* v. *Commissioner of Correction*, supra, 134 Conn. App. 817 (emphasizing that 'trial counsel is entitled to make strategic choices in preparation for trial')." *Weaving* v. *Commissioner of Correction*, 178 Conn. App. 658, 668–70, 179 A.3d 1272 (2017).

In the present case, the habeas court found that Demirjian, after having consulted with various experts, concluded that the victim's toxicology report would be of no value to the petitioner's justification defense at the criminal trial. Under those circumstances, Demirjian's decision not to retain an expert constituted a reasonable tactical decision. See *Arroyo* v. *Commissioner of Correction*, 172 Conn. App. 442, 468, 160 A.3d 425 (counsel's decision not to retain expert was reasonable tactical decision where counsel had consulted with multiple experts, none of whom provided favorable opinions), cert. denied, 326 Conn. 921, 169 A.3d 235 (2017).

Nevertheless, the petitioner appears to claim that the habeas court's finding that Demirjian had contacted various experts, none of whom provided him with opinions that supported the petitioner's justification defense, was clearly erroneous. According to the petitioner, the record reflects that Demirjian was aware of and had consulted with Dr. Milzoff around the time of the criminal trial. We disagree. Demirjian testified that Dr. Milzoff may have been mentioned during the criminal trial, but he could not recall whether he had contacted Dr. Milzoff. Demirjian's testimony does not reflect that Dr. Milzoff was known to him as a potential expert or that he had consulted with Dr. Milzoff around the time of the criminal trial.[7] Further, Dr. Milzoff's testimony is silent as to whether he had communicated with Demirjian. Thus, we cannot conclude that the court's finding was clearly erroneous.

In sum, we conclude that the habeas court properly determined that the petitioner failed to establish that Demirjian's performance was deficient and, therefore, the court did not abuse its discretion in denying the petitioner's petition for certification to appeal as to the ineffective assistance of counsel claim.

### III

The petitioner's next substantive claim is that the habeas court abused its discretion in declining to treat Dr. Milzoff as an expert witness at the habeas trial.

Specifically, the petitioner asserts that the court erroneously concluded that he was required to offer, and the court was required to accept, Dr. Milzoff as an expert witness as a prerequisite to the court treating Dr. Milzoff as an expert witness. The petitioner further asserts that the court's error was harmful. We agree with the petitioner that the court committed error, but we conclude that the petitioner has failed to demonstrate that the error was harmful.

The following standard of review and legal principles govern our review of the petitioner's claim. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . In other words, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion. . . . It is well settled that [t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 169 Conn. App. 343, 368–69, 150 A.3d 244 (2016), cert. denied, 324 Conn. 905, 152 A.3d 544 (2017).

The following additional facts and procedural history are relevant to our resolution of this claim. On November 29, 2016, the petitioner filed with the habeas court a disclosure indicating that he intended to call Dr. Milzoff as an expert witness at the habeas trial. During the habeas trial, Dr. Milzoff offered testimony regarding his qualifications as an expert in the field of toxicology.[8] He then testified as follows. On the basis of his review of the victim's toxicology report, he discovered that certain drugs, including methadone, morphine, and Prozac, were in the victim's system at the time of the victim's death. He explained that morphine either is administered directly as a pain reliever analgesic or is a metabolite of heroin, that some individuals exhibit aggressive tendencies when exposed to morphine, that side effects of Prozac include irritability, agitation, and panic attacks, and that methadone and morphine increase an individual's pain threshold. Although he could explain the general effects of those drugs, he could not provide an opinion as to how those drugs

affected the victim individually.

In denying the petitioner's amended petition for a writ of habeas corpus, the habeas court stated in relevant part: "First, this court is singularly unimpressed with the testimony of Dr. Milzoff. He did come in and testify as to some qualifications and alluded to the fact that he had been used as an expert witness numerous times in the past. But I will note that at no time did the petitioner move to have this court accept Dr. Milzoff as an expert witness." Citing § 7-2 of the Connecticut Code of Evidence and its accompanying commentary, the court then concluded that "it does seem implied that in order to be accepted as an expert witness – or treated as an expert witness – such a witness must be offered and accepted by the court as an expert. Well, that wasn't done here. That doesn't mean that the evidence presented by Dr. Milzoff is not in the record of this court. But this court does not have to recognize Dr. Milzoff as any sort of expert. So, with that comment, Dr. Milzoff's testimony was not persuasive."

Notwithstanding the foregoing observations, the habeas court proceeded to address the substance of Dr. Milzoff's testimony. With respect to Dr. Milzoff's testimony that morphine was a metabolite of heroin, the court stated that the victim's autopsy report indicated that the victim had received emergency medical treatment and that, as an alternative explanation for the presence of morphine in his system, the victim may have been administered morphine in conjunction with the treatment.

The court then commented that the record before it was "weak to the point of being nonexistent." Proceeding to address Dr. Milzoff's testimony that Prozac produced irritability and violent behavior, the court stated that it was "more or less common knowledge" that Prozac is commonly prescribed, particularly to treat depression, and that the court would have "found it to be far more beneficial to have a little more expert – a little more – I shouldn't say more – a little expert testimony as to the effects of Prozac." The court later stated that there was "little basis" for it to determine whether the levels of methadone, Prozac, and the other substances in the victim's system were abnormally high.

On appeal, the petitioner claims that the habeas court erroneously declined to treat Dr. Milzoff as an expert witness on the sole ground that the petitioner did not make an express offer to the court to accept Dr. Milzoff as an expert witness. The petitioner asserts that Dr. Milzoff provided adequate testimony establishing his qualifications to testify as an expert witness, to which the respondent did not object, and that the court's refusal to qualify Dr. Milzoff as an expert witness had no nexus to Dr. Milzoff's knowledge or experience. The petitioner further asserts that the court's error was harmful because Dr. Milzoff's testimony at the habeas

trial, if treated as expert testimony, would have established that an expert could have testified at the criminal trial in support of the petitioner's justification defense. Although we agree with the petitioner that the court erred in declining to treat Dr. Milzoff as an expert witness in this case, we conclude that the petitioner has failed to demonstrate that the court's error was harmful.[9]

The habeas court concluded that § 7-2 of the Connecticut Code of Evidence required the petitioner to offer, and the court to accept, Dr. Milzoff as an expert witness as a prerequisite to the court treating Dr. Milzoff as an expert witness. Section 7-2 provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." The court also relied on the commentary to § 7-2 (2009), which was in effect at the time of its judgment and provided in relevant part: "Section 7-2 imposes two conditions on the admissibility of expert testimony. First, the witness must be qualified as an expert. . . . Whether a witness is sufficiently qualified to testify as an expert depends on whether, by virtue of the witness' knowledge, skill, experience, etc., his or her testimony will 'assist' the trier of fact. . . . The sufficiency of an expert witness' qualifications is a preliminary question for the court. . . . Second, the expert witness' testimony must assist the trier of fact in understanding the evidence or determining a fact in issue. . . . Crucial to this inquiry is a determination that the scientific, technical or specialized knowledge upon which the expert's testimony is based goes beyond the common knowledge and comprehension, i.e., 'beyond the average ken' of the average juror." (Citations omitted.)[10]

We do not construe § 7-2 of the Connecticut Code of Evidence and its accompanying commentary, either in effect at the time of the habeas court's judgment or presently, to require an explicit offer and acceptance of a witness as an expert in order for the witness to be treated as an expert witness. To qualify a witness as an expert, a party is "required to demonstrate that [the witness] ha[s] the special skill or knowledge directly applicable to a matter in issue . . . that [the witness'] skill or knowledge is not common to the average person, and [that the witness'] testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Forte* v. *Citicorp Mortgage, Inc.*, 90 Conn. App. 727, 735–36, 881 A.2d 386 (2005). "Although a court may decide to [declare a witness to be an expert] after an expert's qualifications are put on record, it is not required to do so by our rules of practice or case law. If [an opposing party] has an objection to the testimony or expression of opinion

by such a witness, he has the opportunity to make it and have the court rule on it." (Footnote omitted.) *State* v. *Heriberto M.*, 116 Conn. App. 635, 645, 976 A.2d 804, cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009). In the present case, the petitioner disclosed Dr. Milzoff as an expert prior to trial and elicited testimony from Dr. Milzoff establishing Dr. Milzoff's qualifications to testify as an expert witness. The respondent did not object to Dr. Milzoff's testimony. Under these circumstances, the court's refusal to treat Dr. Milzoff as an expert witness constituted error.

Notwithstanding the foregoing, we conclude that the petitioner has failed to demonstrate that the error was harmful. "[T]he harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . Generally, a trial court's ruling will result in a new trial only if the ruling was both wrong *and* harmful. . . . A petition for a writ of habeas corpus is a civil action . . . therefore, in order to prevail, the petitioner must be able to satisfy the harmless error standard." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 127 Conn. App. 454, 460, 14 A.3d 1053, cert. denied, 302 Conn. 933, 28 A.3d 991 (2011). In the present case, the court determined that the petitioner failed to establish that Demirjian rendered deficient performance where Demirjian, after having consulted with several experts, concluded that the victim's toxicology report was of no value to the petitioner's justification defense at the criminal trial. Even if the court had treated Dr. Milzoff's testimony regarding the presence and effects of the drugs in the victim's system as expert testimony, that testimony was immaterial to the court's determination that Demirjian's performance was not deficient. Accordingly, the court's error was harmless.

In sum, although we agree with the petitioner that the habeas court erred by declining to treat Dr. Milzoff as an expert witness at the habeas trial, we conclude that the petitioner has failed to demonstrate that the court's error was harmful and, therefore, the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

IV

The petitioner's final substantive claim is that the habeas court abused its discretion in failing to review certain evidence admitted at the habeas trial prior to denying his amended petition for a writ of habeas corpus. Specifically, the petitioner asserts that the court erroneously failed to review specific excerpts from the criminal trial transcripts.[11] We disagree.

"[T]he trier [of fact] is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and

claimed. . . . [W]e are not justified in finding error upon pure assumptions as to what the court may have done. . . . We cannot assume that the court's conclusions were reached without due weight having been given to the evidence presented and the facts found. . . . Unless the contrary appears, this court will assume that the court acted properly. . . . [I]f . . . [a] statement [by the court may] suggest that the court did not consider [certain] testimony, we . . . are entitled to presume that the trial court acted properly and considered all the evidence. . . . There is, of course, no presumption of error." (Citations omitted; internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 229–30, 145 A.3d 362 (2016), cert. denied, 324 Conn. 905, 153 A.3d 653 (2017).

The following additional facts and procedural history are relevant to this claim. During the petitioner's direct examination of Dr. Milzoff, the habeas court admitted into evidence, without objection from the respondent, a disc containing, inter alia, electronic copies of the criminal trial transcripts in their entirety. The petitioner explicitly referenced the transcripts on one occasion during the remainder of the evidentiary portion of the habeas trial. Specifically, during the petitioner's redirect examination of Demirjian, the petitioner directed Demirjian to the excerpt reflecting the state's comment during the criminal trial that there had been "mention" of Dr. Milzoff at some point.[12]

At the outset of its decision denying the petitioner's amended petition for a writ of habeas corpus, issued immediately following closing arguments, the habeas court stated: "Now, obviously, since you have introduced the transcript[s] of the [criminal] trial, I have not had an opportunity to review the transcript[s] of the trial. I don't believe such review is necessary to a resolution of the issue in front of this court." The petitioner did not contest those statements.[13]

On appeal, the petitioner claims that the habeas court erroneously failed to review specific excerpts from the criminal trial transcripts. Specifically, the petitioner asserts that the court should have reviewed the excerpt reflecting the state's comment during the criminal trial that there had been "mention" of "Dr. [Milzoff] some time ago . . . ." The petitioner argues that this excerpt was critical for the court to review in assessing Demirjian's credibility. Further, the petitioner asserts that the court should have reviewed excerpts reflecting Demirjian's attempts to elicit testimony from the state's witnesses about the drugs found in the victim's system and containing the petitioner's testimony explaining his justification for the actions he took against the victim. The petitioner argues that those excerpts were crucial for the court to review in order to understand how Dr. Milzoff's testimony regarding the drugs found in the victim's system would have aided the petitioner's justifi-

cation defense at the criminal trial. In response, the respondent argues, inter alia, that the transcripts were immaterial to the court's determination that Demirjian did not render deficient performance by failing to call an expert witness at the criminal trial. We agree with the respondent.

"The issue of whether the habeas court must read every word of the underlying criminal trial transcript has been addressed previously by this court. In *Evans* v. *Warden*, 29 Conn. App. 274, 276–77, 613 A.2d 327 (1992), the petitioner alleged that his criminal appellate counsel rendered ineffective assistance by failing to raise a sufficiency of the evidence claim on direct appeal. At the habeas trial, the habeas court stated that 'I really don't think that I have any cause whatsoever to review the transcripts [of the underlying criminal trial],' and then denied the petition for a writ of habeas corpus. . . . On appeal, this court held that the habeas court abused its discretion by failing to read the trial transcript because [a] full and fair review of the petitioner's claim that . . . appellate counsel provided ineffective assistance in failing to include a sufficiency of the evidence claim in his direct appeal required the habeas court to read the trial transcript. . . .

"Since *Evans*, this court has clarified that *Evans* does not stand for the proposition that a new hearing is [always] warranted [if] the habeas court does not review all of the evidence. . . . Although we recognize that the habeas court must consider all of the evidence admitted for all the purposes it is offered and claimed . . . we also recognize that the court is not obligated to review evidence that is not relevant to any issue under consideration. . . . Additionally, [a]lthough a habeas court is obligated to give careful *consideration* to all the evidence . . . it does not have to read the full text of every exhibit. . . .

"In *Hull* [v. *Warden*, 32 Conn. App. 170, 177, 628 A.2d 32, cert. denied, 227 Conn. 920, 632 A.2d 691 (1993)], this court emphasized that the extent that the criminal trial transcript must be reviewed by the habeas court depends upon the nature and scope of the particular claim of ineffective assistance of counsel. The petitioner in *Hull* had alleged that his criminal trial counsel rendered ineffective assistance by failing to object to certain testimony. . . . The habeas court determined that trial counsel's conduct was not deficient, and, thus, did not reach the prejudice prong of *Strickland*. . . . The habeas court further stated that it did not review certain exhibits admitted at the habeas trial because it did not consider them necessary to its decision. . . .

"On appeal, this court, in reaching its decision, distinguished between the claim at issue in *Hull* and the claim at issue in *Evans*. In *Evans*, the petitioner's habeas claim had implicated the sufficiency of the evidence presented at the criminal trial, which require[s]

the reviewing court to construe all of the evidence presented at trial. . . . Thus, the habeas court's refusal to review any, let alone all, of the criminal trial transcript required a new hearing. By contrast, in *Hull*, the petitioner's claims [were] exceedingly narrow in scope and concerned solely with the testimony of [certain witnesses]. This [was] particularly true because the habeas court . . . concluded that . . . the petitioner's counsel was not ineffective for failing to object to [certain testimony, and, thus], had no need to proceed to the second prong of the *Strickland* test concerning the potentially broader issue of prejudice. . . . Accordingly, this court concluded that the habeas court did not abuse its discretion by not reviewing the entire trial transcript because the habeas court reviewed the parties' pretrial briefs, heard substantial testimony and argument at the hearing, read the transcripts of [the testimony of the witness at issue], and was properly satisfied that . . . a review of the entire trial transcript . . . would [not] have been of any additional benefit. . . .

"Likewise, in *Rivera* v. *Commissioner of Correction*, 51 Conn. App. 336, 338, 721 A.2d 918 (1998), this court held that the habeas court, in determining whether trial counsel rendered ineffective assistance, did not abuse its discretion by reading only the portions of the criminal trial transcript that counsel specifically referenced, although the entire criminal trial transcript had been admitted into evidence. In so doing, this court emphasized that the habeas court had reviewed the portions of the criminal trial transcript that the petitioner identified at the habeas trial as relevant to his claims, and, on appeal, the petitioner was unable to articulate in his brief or at oral argument any reason why the habeas court was required to read the entire transcript in light of his discrete, particularized claims of ineffective assistance of counsel [none of which implicated the sufficiency of the evidence admitted at the criminal trial]." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 230–32.

In *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 233, this court reiterated that, pursuant to *Hull* and *Rivera*, the extent to which a habeas court is required to review criminal trial transcripts admitted into evidence at a habeas trial is "dependent upon the particular claim made and on which prong of *Strickland* the court based its determination." This court also pronounced that, absent the petitioner identifying on appeal the portions of the transcripts that "(1) would have altered the [habeas] court's determination and (2) the [habeas] court failed to read, this court is guided by the presumption that the habeas court acted properly and considered all the relevant evidence." Id., 234. In *Moye*, the petitioner alleged in relevant part that his criminal defense counsel rendered ineffective assis-

tance by failing to request a sequestration order. Id., 212 n.3, 227. The petitioner filed a pretrial brief with portions of the criminal trial transcripts attached thereto. Id., 227. At the habeas trial, several additional portions of the transcripts that had not been attached to the petitioner's pretrial brief were admitted into evidence. Id., 227–28. In denying the petitioner's petition for a writ of habeas corpus, the habeas court stated: "I've read the petitioner's pretrial brief. I have *not read all of the transcripts* that have been provided. I don't know that it is necessary to do so. There have been references to those—to what has taken place." (Emphasis in original.) Id., 228. The habeas court proceeded to determine that counsel's performance was not deficient and further that, even assuming that counsel's performance was deficient, the petitioner had not suffered any prejudice. Id., 229.

On appeal, the petitioner claimed that the habeas court could not have determined whether he was prejudiced by his criminal defense counsel's alleged deficient performance without reviewing all of the criminal trial transcripts. Id., 225.

In rejecting that claim, this court determined that, unlike *Evans*, the petitioner's claim was narrowly focused, and, like *Hull*, the habeas court found that the petitioner had failed to prove that counsel's performance was deficient such that it did not have to address the prejudice prong of *Strickland*, and therefore the habeas court did not have to review all of the criminal trial transcripts. Id., 233. In addition, this court emphasized that the habeas court read some, but not all, of the transcripts. Id. This court presumed that the habeas court acted properly and reviewed all of the relevant transcripts, as the habeas court did not identify which portions of the transcripts it had read. Id., 233–34. Moreover, the habeas court read the petitioner's pretrial brief, to which the petitioner had attached specific portions of the criminal trial transcripts. Id., 234. Although additional portions of the transcript were admitted into evidence at the habeas trial, the petitioner failed to articulate the significance of those additional portions to his ineffective assistance of counsel claim. Id.

In the present case, the petitioner raised a discrete, particularized claim at the habeas trial that Demirjian rendered ineffective assistance by failing to call an expert witness at the criminal trial to lay foundational testimony to admit the victim's toxicology report into evidence. In rejecting that claim, the habeas court determined, inter alia, that Demirjian's performance was not deficient where, following his consultation with several experts, Demirjian had concluded that the victim's toxicology report was of no value to the petitioner's justification defense.[14] The excerpts from the criminal trial transcripts reflecting Demirjian's attempts to elicit testimony from the state's witnesses regarding the drugs

found in the victim's system and containing the petitioner's testimony explaining his justification for his actions against the victim had no bearing on the court's analysis of whether Demirjian's performance was deficient. The remaining excerpt reflecting the state's comment during the criminal trial that there had been "mention" of Dr. Milzoff at some point was cumulative of Demirjian's testimony that Dr. Milzoff may have been mentioned during the criminal trial. Thus, the court's review of that excerpt would not have altered its determination that Demirjian's performance was not deficient.

Therefore, the petitioner has failed to identify any excerpts from the criminal trial transcripts that would have altered the court's determination that Demirjian's performance was not deficient. Accordingly, "this court is guided by the presumption that the habeas court acted properly and considered all the relevant evidence."[15] *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 234.

In sum, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in failing to review the excerpts from the criminal trial transcripts identified by the petitioner and, therefore, the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] We deem the petitioner's state constitutional claims abandoned because he has failed to provide an independent analysis under our state constitution. See *Gomez* v. *Commissioner of Correction*, 178 Conn. App. 519, 522 n.1, 176 A.3d 559 (2017), cert. granted on other grounds, 328 Conn. 916, 180 A.3d 962 (2018).

[2] With one limited exception, the habeas court did not make any factual findings in its oral decision denying the petitioner's amended petition for a writ of habeas corpus with respect to the events that gave rise to the petitioner's arrest and conviction. Accordingly, we include the factual recitation set forth in the decision resolving the petitioner's direct appeal from his conviction.

[3] "The victim and his wife previously had complained to the [petitioner] and his girlfriend about their loud music. The [petitioner], at one point, called the victim's wife 'a devil.' The victim and his wife also telephoned the police on several occasions to complain about the noise, and the police went to the [petitioner's] apartment on several occasions."

[4] The petitioner, representing himself, filed a second petition for a writ of habeas corpus on September 18, 2014, claiming that he had been "denied a lawyer at interrogation after [he] requested counsel be present" in violation of his state and federal constitutional rights to due process. On March 25, 2015, the petitioner, through appointed counsel, filed a motion to consolidate the two pending habeas actions, which the habeas court granted on April 10, 2015.

[5] The habeas court subsequently filed a signed transcript of its oral decision with the clerk of the court. See Practice Book § 64-1 (a).

[6] The petitioner also asserts that he was prejudiced by Demirjian's alleged deficient performance. Because we conclude that the habeas court did not err in determining that Demirjian's performance was not deficient, we need not reach the petitioner's claim regarding prejudice. See, e.g., *Rosa* v. *Commissioner of Correction*, 171 Conn. App. 428, 435 n.6, 157 A.3d 654 ("the failure to prove either prong of the *Strickland* standard is determinative of the petitioner's ineffective assistance of counsel claim"), cert. denied, 326 Conn. 905, 164 A.3d 680 (2017).

[7] The petitioner also relies on the excerpt from the criminal trial transcripts reflecting that the state had noted during the criminal trial that there had

been "mention" of "Dr. [Milzoff] some time ago . . . ." The petitioner contends that the excerpt supports his proposition that Demirjian was aware of and had consulted with Dr. Milzoff around the time of the criminal trial. We are not persuaded. In the excerpt, the state did not represent that Demirjian had disclosed Dr. Milzoff as a potential witness or otherwise indicate how it had become aware of Dr. Milzoff. The excerpt does not demonstrate that Demirjian was familiar with and had contacted Dr. Milzoff; rather, the excerpt is merely cumulative of Demirjian's testimony that Dr. Milzoff may have been mentioned during the criminal trial.

[8] Specifically, Dr. Milzoff testified that he had been a forensic toxicologist since 1972, that he had a bachelor's degree in pharmacy, a master's degree in toxicology and a doctorate in toxicology, that he was board certified, a diplomat of the American Board of Forensic Toxicologists, a charter member of the Society of Forensic Toxicologists and a member of the American Academy of Forensic Sciences, and that he had testified as an expert toxicologist "hundreds of times."

[9] The respondent concedes that the petitioner was not required to offer Dr. Milzoff expressly to be accepted by the habeas court as an expert witness; however, the respondent argues that the petitioner suffered no harm by the court's error because the court considered, and ultimately rejected, the substance of Dr. Milzoff's testimony. We disagree with the respondent's argument. Although the court addressed the substance of Dr. Milzoff's testimony, the court found that the testimony was not persuasive because the court did not consider it to be expert testimony.

[10] The commentary to § 7-2 of the Connecticut Code of Evidence was amended effective February 1, 2018. The commentary to § 7-2 currently provides in relevant part: "Section 7-2 requires a party offering expert testimony, in any form, to show that the witness is qualified and that the testimony will be of assistance to the trier of fact. A three part test is used to determine whether these requirements are met. . . . First, the expert must possess knowledge, skill, experience, training, education or some other source of learning directly applicable to a matter in issue. . . . Second, the witness' skill or knowledge must not be common to the average person. . . . Third, the testimony must be helpful to the fact finder in considering the issues. . . . The inquiry is often summarized in the following terms: 'The true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue.' " (Citations omitted.) The amendment does not affect our analysis.

[11] In his principal appellate brief, the petitioner appeared to claim that the habeas court abused its discretion in failing to review all of the criminal trial transcripts. In his reply brief and during oral argument before this court, however, the petitioner limited his claim by arguing that the habeas court's failure to review specific excerpts from the transcripts constituted an abuse of discretion.

[12] During its cross-examination of Demirjian, the respondent directed Demirjian to a different excerpt to refresh Demirjian's recollection regarding a ruling issued during the criminal trial. In addition, during his closing argument, the petitioner argued that it was his "understanding from reading the [criminal trial] transcripts" that the trial court had precluded the admission of the victim's toxicology report into evidence prior to Demirjian's cross-examination of Dr. Carver because it was not relevant to Dr. Carver's testimony.

[13] The petitioner was not required to object to the statements at issue in order to preserve his claim on appeal that the court abused its discretion in failing to review specific excerpts from the criminal trial transcripts. See *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 225–27.

[14] Although the habeas court also determined that the petitioner failed to establish that he was prejudiced by Demirjian's alleged deficient performance, the court was not required to reach that inquiry following its determination that the petitioner failed to demonstrate that Demirjian's performance was deficient and, thus, the court was not required to consider the entirety of the criminal trial transcripts. *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 233.

[15] Although we reject the petitioner's claim, we reiterate the cautionary note that this court in *Moye* directed to habeas courts: "A [trier of fact] is bound to *consider* all the evidence which has been admitted, as far as

admissible, for all the purposes for which it was offered and claimed. . . . [This principle is] fully applicable in habeas corpus trials. . . . Just as a jury should give careful consideration to all the evidence in a case, so too should a habeas court give careful consideration to all the evidence. . . . If a habeas court concludes that it is not necessary to review certain exhibits in light of the manner in which it has disposed of the claims, it should endeavor to explain what it has not reviewed and why it is not necessary to do so. A court should strive to avoid leaving litigants with the impression that it has failed to discharge its duty or somehow acted unlawfully. Public confidence in our justice system is undermined if parties perceive that a court has not met its obligation to provide them with a full and fair review of their claims. We caution courts not to abrogate their duty to review the evidence admitted at trial or to give litigants the erroneous impression that they have done so." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 234–35.